UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

KENNETH P.,[1] )
)
      *Plaintiff*, )
)
      v. )  No. 4:19-cv-0059-JMS-DML
)
ANDREW M. SAUL, Commissioner of the )
Social Security Administration, )
)
      *Defendant*. )

## **ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Kenneth P. first applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") from the Social Security Administration ("SSA") in May 2010. [Filing No. 7-5 at 2-8.] His application was denied initially and upon reconsideration, [Filing No. 7-4 at 2-9; Filing No. 7-4 at 12-17], and after two hearings before two different Administrative Law Judges ("ALJs") and two successful appeals, a third ALJ conducted a hearing and concluded that Kenneth P. was not entitled to receive benefits for the period between the alleged onset date of July 1, 2002 and his 55th birthday on March 12, 2016, but was entitled to benefits after he turned 55, [Filing No. 7-11 at 10-28]. Kenneth P. timely filed this civil action asking this Court to review the partial denial of benefits, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). [Filing No. 1.][2]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] Pursuant to 20 C.F.R. § 404.984, because Kenneth P.'s case had already been remanded by a federal court, he did not file written exceptions concerning the ALJ's decision, and the Appeals Council did not assume jurisdiction, he appealed the ALJ's decision directly to this Court.

# I.
## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits . . . to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original).[3]

"If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a

---

[3] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in most respects relevant to this case. For the sake of simplicity, this Entry generally contains citations to DIB sections only.

claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). However, courts have the statutory power to affirm, reverse, or modify the SSA's decision, with or without remanding the case for further proceedings, and this power includes the ability to remand the case with instructions for the Commissioner to calculate and award benefits to the applicant. *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). "An award of benefits is appropriate, however, only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Id.*

3

# II.
## BACKGROUND[4]

### A. Procedural History

After applying for SSI and DIB in 2010 and being denied initially and upon reconsideration, Kenneth P. appeared for a hearing before an ALJ in January 2012. [Filing No. 7-2 at 33.] The following month, the ALJ issued a decision concluding that Kenneth P. was not disabled and denying him benefits. [Filing No. 7-2 at 11-27.] The Appeals Council denied review, [Filing No. 7-2 at 2-4], and Kenneth P. filed a complaint in federal court, [Filing No. 7-13 at 4]. The District Court concluded that the ALJ had erred and remanded the case to the SSA for further proceedings. [Filing No. 7-13.]

A second hearing was held before an ALJ in April 2015, and the ALJ again concluded that Kenneth P. was not disabled and denied his application for benefits. [Filing No. 7-13 at 60-72.] Kenneth P. appealed, and the Appeals Council granted the request for review and remanded the case for a third hearing and decision. [Filing No. 7-13 at 82-84.]

### B. Most Recent Hearing and Decision

Kenneth P. appeared for his third hearing before an ALJ on October 9, 2018. [Filing No. 7-11 at 45.] Kenneth P. testified at the hearing, as did a vocational expert ("VE"). [*See generally* Filing No. 7-11 at 45-78.]

Relevant here, the ALJ posed a hypothetical to the VE, asking if a claimant could perform work in the national economy if that claimant had the same age, education, and work experience as Kenneth P., and was able to:

---

[4] The medical and other evidence of record is amply set forth in the parties' briefs and, because it is not directly relevant to the issues in this case, will not be repeated here. Specific facts will be discussed as necessary for the Court's decision.

- "lift and carry up to 20 pounds occasionally, ten pounds frequently;"

- frequently climb ramps and stairs and occasionally climb ladders, ropes, or scaffolds, and frequently balance, stoop, kneel, crouch, and crawl;

- understand, remember, and carry out simple instructions;

- maintain sufficient concentration, attention, and pace to complete simple tasks;

- ask simple questions, or request assistance;

- "interact occasionally with the public, and interact with coworkers and supervisors adequately on a superficial basis such that the job does not require customer service duties, conflict resolution, arbitration, or persuading others;"

- adapt to routine, predictable changes in the work process, and environment; and

- sit four hours, stand two hours, and walk two hours in an eight-hour workday.

[Filing No. 7-11 at 70-72.] The VE testified that a hypothetical person with these limitations could perform light work as a protective clothing issuer, for which there were 68,000 jobs in the national economy, or cleaner of equipment, for which there were 17,000 jobs in the national economy. [Filing No. 7-11 at 72.]

Upon questioning by Kenneth P.'s counsel, the VE stated that, "[i]n any job," a worker would need to be able to accept instruction, and such instruction, "if it's done right, [is] more detailed than it is superficial." [Filing No. 7-11 at 74.] The VE also stated that all of the mentioned jobs typically had probationary periods, which generally last 30 days but could last up to 90 days. [Filing No. 7-11 at 75-76.] When asked if a worker would need to have contact with others that would be more than superficial during the probationary period, the VE testified that job training "can either be by instructional book, or it can be done with a fellow worker, and it's usually done with a fellow worker . . . . So the intensity is a little higher than casual." [Filing No. 7-11 at 76.]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Kenneth P. was not disabled from the alleged onset

date until March 12, 2016. [Filing No. 7-11 at 10-27.] However, the ALJ concluded that, after Kenneth P. turned 55 and became "an individual of advanced age" on March 12, 2016, he became disabled due to the change in his age category. [Filing No. 7-11 at 27-28.] Specifically, the ALJ found as follows:

- At Step One, Kenneth P. had not engaged in substantial gainful activity[5] since July 1, 2002, the alleged onset date. [Filing No. 7-11 at 15.]

- At Step Two, he had "the following severe impairments: cervical and lumbar degenerative disc disease; chronic obstructive pulmonary disease; a bipolar disorder; a personality disorder; a post-traumatic stress disorder; and polysubstance dependence." [Filing No. 7-11 at 15.] He also had the following non-severe impairments: status post healed wrist fracture, dysphagia, heartburn, hepatitis C, and knee pain. [Filing No. 7-11 at 15.]

- At Step Three, he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 7-11 at 16.]

- After Step Three but before Step Four, Kenneth P. had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). [Filing No. 7-11 at 17]. Specifically, he could: lift and carry up to twenty pounds occasionally and "less than ten pounds frequently;" sit and/or walk for six hours of an eight-hour day and sit for six hours of an eight-hour day with normal breaks; frequently climb ramps and stairs, but only occasionally climb ladders, ropes, and scaffolds; frequently balance, stoop, kneel, crouch, and crawl; not be in contact with concentrated exposure to fumes, odors, dust, gases, or in poorly-ventilated areas; understand, remember, and carry out simple instructions; maintain sufficient concentration, attention, and pace to complete simple tasks; ask simple questions or request assistance; "interact occasionally with the public, and interact with coworkers and supervisors adequately on a superficial basis such that the job does not require customer service duties, conflict resolution, arbitration, or persuading others;" and adapt to routine predictable changes in work processes and environment. [Filing No. 7-11 at 17.]

- At Step Four, Kenneth P. had no past relevant work. [Filing No. 7-11 at 25.]

- At Step Five, Kenneth P. could have performed work in the national economy from the alleged onset date until March 12, 2016. [Filing No. 7-11 at 26.] Specifically, based on

---

[5] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

testimony of the VE, there were jobs that existed in significant numbers in the national economy that Kenneth P. could have performed, including cleaner of equipment and protective clothing issuer. [Filing No. 7-11 at 26.] Once Kenneth P. turned 55, there were no longer any jobs existing in significant numbers in the national economy that he could perform. [Filing No. 7-11 at 27.] In other words, Kenneth P. was not disabled from the alleged onset date until March 12, 2016, but he became disabled on March 12, 2016 and continued to be disabled thereafter. [Filing No. 7-11 at 27.]

### III.
#### DISCUSSION

Notably, Kenneth P. does not contest any of the ALJ's findings at Steps One through Four or the RFC determination, and instead he raises three claims of error regarding the ALJ's conclusions reached in Step Five. [Filing No. 11 at 5-8.] Because the Court concludes that resolution of one of these issues in Kenneth P.'s favor is dispositive, only that issue will be addressed.

In relevant part, Kenneth P. argues that the ALJ erred in finding that he could perform work in the national economy because the jobs identified by the VE required probationary periods that his limitations prevented him from completing. [Filing No. 11 at 19-26.] Specifically, he argues that the probationary periods for the jobs of protective clothing issuer and equipment cleaner require more than superficial contact with others, and he was limited by the ALJ's RFC finding to only superficial contact. [Filing No. 11 at 20-21.] Kenneth P. further argues that, because the VE testified that all workers must be able to accept instruction and instruction should involve more than superficial contact, and he could not tolerate more than superficial contact, he would not have been able to sustain any employment. [Filing No. 11 at 22.] He asks that the Court order that he be awarded benefits, or in the alternative, remand the case. [Filing No. 11 at 25-26.]

The Commissioner responds that the ALJ reasonably assessed Kenneth P.'s limitations and properly included them in the RFC determination. [Filing No. 15 at 9-11.] The Commissioner

7

further argues that the ALJ properly relied upon the VE's testimony to conclude that Kenneth P. could perform work in the national economy, and the Court should reject his argument that the probationary period would have prevented him from performing the jobs identified by the VE. [Filing No. 15 at 14-18.] According to the Commissioner, Kenneth P. misconstrues the VE's testimony, which actually stated that: (1) training could be accomplished by a fellow worker *or by an instructional book*, which would not require contact with others; and (2) despite the existence of probationary periods and their attendant social demands, a hypothetical claimant with the same limitations as Kenneth P. would be able to perform the jobs of equipment cleaner and protective clothing issuer. [Filing No. 15 at 14-15.] The Commissioner also contends that: (1) the VE's testimony "and common sense" dictate that there would be several ways to accommodate an individual's need to learn job tasks without more than superficial contact with others; (2) the result would be "untenable" if ALJs were required to find that a claimant could not perform any job every time the claimant could not have more than superficial contact with supervisors; and (3) none of Kenneth P.'s medical evidence demonstrated that he would be unable to complete a probationary period. [Filing No. 15 at 15-18.]

In reply, Kenneth P. acknowledges that there is no decision from a Court of Appeals on this issue and all of the relevant district court decisions were included in the Commissioner's brief, although he maintains that he would read them differently. [Filing No. 16 at 4.] He attempts to distinguish each of the cases, arguing that it is not "untenable" for claimants to be deemed disabled whenever they cannot complete a probationary period due to their social limitations—because each claimant's disability should be evaluated based on the evidence in their case. [Filing No. 16 at 6-7.] He argues that the VE's testimony established that he is unable to perform any job because his

8

social limitations prevent him from accepting instruction or completing a probationary period. [Filing No. 16 at 4-18.]

As the parties both acknowledge, there is no binding authority from the Seventh Circuit addressing the issue presented in this appeal. The Court begins its analysis with a brief overview of the non-binding cases upon which the parties primarily rely.

Kenneth P. principally relies upon the reasoning applied in the Magistrate Judge's Report and Recommendation ("R&R") in *Shelton v. Colvin*, Case No. 1:14-cv-1920-SEB-TAB, at docket entry 23 (S.D. Ind. Oct. 13, 2015). In that case, the claimant argued that the social limitations found by the ALJ—specifically, that he was limited to only brief, superficial interaction with coworkers, supervisors, and the general public—prevented him from completing the necessary probationary periods for the jobs used by the ALJ to deny his claims. *Id*. at 6-7. The VE testified that a hypothetical worker with the same limitations as the claimant could work as a janitor, groundskeeper, or hand packager, and those jobs typically have probationary periods of about 90 days, which would require that the worker "learn from someone, either a co-worker or supervisor." *Id*. at 6. The Magistrate Judge agreed with the claimant, writing:

> Herein lies the problem. These jobs require a worker to go through a probationary period during which he must have more than brief, superficial interaction with supervisors and co-workers. Yet, according to the ALJ, [the claimant] is not able to do that. According to the ALJ, [the claimant] is not able to have more than brief, superficial interaction with supervisors and co-workers. This dichotomy compels the conclusion that [the claimant] will be unable to get through the required probationary period at each of the jobs used to deny his claims.

*Id*. at 6-7. Because of this, and because the ALJ erred in failing to provide a logical basis for rejecting the opinions of an evaluating psychologist and in failing to evaluate the opinions of two other psychologists, the Magistrate Judge recommended that the case be remanded to the SSA for further proceedings. *Id*. at 7. The District Court expressly declined to consider the issue of whether

9

the claimant's social limitations were inconsistent with the ALJ's finding that he could perform work, and adopted the R&R only to the extent that it recommended remanding the case based on the ALJ's failure to properly consider the psychologists' opinions. *Shelton v. Colvin*, 2016 WL 1253007, at *1 n.1 (S.D. Ind. Mar. 31, 2016).

The Commissioner principally relies on three other cases, the first of which is *Hemby v. Berryhill*, 2017 WL 951785, at *11 (E.D. Mo. Mar. 10, 2017). In *Hemby*, the claimant argued that the ALJ erred in concluding that he could work as a document preparer, dowel inspector, and patcher because the VE's testimony stated that those jobs would require more frequent contact with a supervisor during the probationary period, but the ALJ's RFC finding limited him to only occasional interaction with coworkers and supervisors. *Id.* at *11. The court rejected the claimant's argument, concluding that, although the VE testified that the identified jobs would require more frequent contact during the probationary period, she nonetheless ultimately concluded that the hypothetical claimant could perform those jobs. *Id.* (citing the VE's testimony indicating, in relevant part, that there would be increased contact during the probationary period but "eventually" all three jobs would meet the criteria posed by the hypothetical).

The *Hemby* court also noted that a similar argument was rejected as "untenable" in *Wright v. Comm'r of Soc. Sec.*, 2013 WL 3873947 (N.D. Ohio Jul. 25, 2013). *Id.* Specifically, the *Wright* court concluded that, if it were to accept the claimant's argument, "every single time an individual is limited to superficial interactions with others, the result would require an ALJ to determine that the claimant is entitled to benefits since training for a job necessarily involves more than superficial interaction with others," and "[s]uch a result is untenable." *Wright*, 2013 WL 3873947, at *3.

The Commissioner also points to *Dean v. Berryhill*, 2019 WL 1170479, at *5 (E.D. Cal. Mar. 13, 2019), in which the VE testified that a person limited to only occasional interaction with

supervisors could perform the jobs of marker, router, and checker, "once one learns the job past the training time," and "during the training timeframe, there may be more than occasional contact with the supervisor," but after the training period was over, contact would not be more than occasional. *Id*. at *4. The court rejected the claimant's argument that this testimony established that an individual with the identified social limitation could not get past the training period for the representative jobs, noting that the VE's testimony merely stated that more than occasional contact *may be* required during training. *Id*. at *5.

Finally, the Commissioner cites—and attempts to distinguish—*Potrebic v. Berryhill*, 2019 WL 1397477 (N.D. Ind. Mar. 27, 2019). In that case, the claimant was limited to appropriate but superficial contact with coworkers, supervisors, and the general public. *Id*. at *2. The VE testified that learning a job—even an unskilled job—required more than superficial contact with a supervisor and concluded that being limited to superficial contact with supervisors would mean being unable to perform any job. *Id*. The ALJ nonetheless found that the claimant could perform jobs in the national economy, without addressing the VE's testimony to the contrary, and the district court remanded the case, concluding that it was error for the ALJ to disregard the VE's explicit testimony. *Id*.

Here, based on the undisputed RFC determination, Kenneth P. was limited to "interact[ing] occasionally with the public, and interact[ing] with coworkers and supervisors adequately on a superficial basis." [Filing No. 7-11 at 17.] In addition, the VE made the following relevant statements: (1) a hypothetical claimant with Kenneth P.'s RFC could perform work as a cleaner of equipment or protective clothing issuer, [Filing No. 7-11 at 70-73]; (2) a worker in any job must be able to accept instruction, and instruction "if it's done right, [is] more detailed than it is superficial," [Filing No. 7-11 at 74]; (3) the representative jobs typically have probationary periods

11

of 30 to 90 days, [Filing No. 7-11 at 76]; and (4) training during the probationary period can be accomplished by instructional book or by a fellow worker, and, if done with a fellow worker, the intensity of the required contact "is a little higher than casual," [Filing No. 7-11 at 76].

When viewed holistically and in combination with the RFC determination, the VE's testimony can support only one conclusion: that a hypothetical claimant with Kenneth P.'s limitations would be unable to perform any job in the national economy. It is true that the VE never explicitly stated that the hypothetical claimant would be unable to perform any job—like the statement relied upon by the district court in *Potrebic*. However, also absent from the VE's testimony is any explicit reconsideration of the hypothetical claimant's ability to perform the representative jobs after the issues of instruction and the probationary period were raised, as was the case in *Hemby* and *Dean*. Thus, the Court is left to draw reasonable conclusions from the statements that the VE did make, including that a worker in any job would need to be able to accept greater-than-superficial instruction and that the representative jobs had probationary periods that would likely require greater-than-superficial instruction.

To this end, the Court finds the Magistrate Judge's reasoning in *Shelton* most persuasive. If Kenneth P. cannot have more than superficial contact with coworkers or supervisors, and *any job* would require an ability to accept instruction consisting of more-than-superficial contact with a supervisor, then it follows that Kenneth P. cannot perform any job. Furthermore, although the VE testified that training during the probationary period could be accomplished by instructional book, it is "usually done with a fellow worker," which also requires more than superficial contact with that worker. Accordingly, it also follows that Kenneth P. likely would be unable to complete a probationary period, in addition to his general inability to accept instruction at any time.

The Court rejects the proposition that it would be "untenable" to require ALJs to arrive at a finding of disability whenever the claimant's limitations necessitate that finding; indeed, that is the very purpose of the disability inquiry and the only appropriate result. In this case, there are no remaining factual issues to be decided and the record evidence compels the conclusion that Kenneth P. has been disabled since his alleged onset date. Thus, the Court determines that an award of benefits is appropriate and remands the case to the SSA with instructions to calculate and award such benefits. See *Allord*, 631 F.3d at 415.

## IV.
### CONCLUSION

Based on the foregoing, the Court **REVERSES** the Commissioner's decision to deny Kenneth P. benefits from the alleged onset date of July 1, 2002 until March 12, 2016 and **REMANDS** this case to the Social Security Administration with instructions to calculate and award benefits for that period. Final judgment shall issue accordingly.

Date: 12/2/2019

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**